HERTZ CORPORATION, Respondent, v AVIS, INC., Appellant.

First Department, January 29, 1985

**APPEARANCES OF COUNSEL**

*Steven J. Stein* of counsel (*Barry G. Felder* and *Steven M. Kayman* with him on the brief; *Proskauer Rose Goetz & Mendelsohn,* attorneys), for appellant.

*William E. Kelly* of counsel (*Lane & Mittendorf* and *Cravath, Swaine & Moore,* attorneys), for respondent.

**OPINION OF THE COURT**

SANDLER, J. P.

The question presented is whether in an action for unfair competition a large corporation (plaintiff Hertz) can require its major competitor (defendant Avis) to compile and reveal over 120,000 pages of highly confidential financial records in the absence of a claim that Avis' alleged misappropriation of Hertz' trade secrets resulted in a loss of profits to Hertz. We believe Special Term erred, in the order here appealed from, in directing such a disclosure.

The complaint, served September 30, 1982, alleges, as here relevant, that in April, 1982, Joseph V. Vittoria left Hertz' employ to become the president of Avis, taking with him confidential documents and trade secrets, which were thereafter used by Avis to "reverse substantial business losses" and "correct operational deficiencies". The complaint further alleges that Avis solicited and hired Hertz management personnel in order to gain access to " 'inside' information" concerning Hertz' operations and finances. Hertz sought, in addition to injunctive relief, actual damages in an amount yet to be determined (but later alleged in their motion papers to exceed $25 million) plus punitive damages of $25 million.

Special Term (Leonard N. Cohen, J.), denied Hertz' application for preliminary injunctive relief, finding, on the basis of extensive affidavits and memoranda submitted by both parties: (1) that Avis did not use unethical or unfair methods to induce Hertz employees to join Avis; (2) that the information and data characterized by Hertz as "trade secrets" constituted merely information ordinarily possessed by managerial personnel with general familiarity, experience and knowledge of the car rental industry; (3) that Hertz had not demonstrated that Vittoria was such a uniquely valuable employee or that his continued employment by Avis raised a threat that he might disclose Hertz' trade secrets so as to warrant enjoining his employment by Avis; and finally (4) that "the circumstances when viewed as a whole against the background of our free competitive economic system demonstrate neither the plaintiff's probable success on the merits nor imminent harm or injury to the plaintiff's worldwide business enterprise."

In the course of extensive discovery proceedings over a period of one and one-half years Avis tried, without success, to determine the factual basis for Hertz' claim of actual damages. At one deposition Hertz' chief financial officer in response to several questions denied any knowledge of Hertz' profits during the relevant periods, and declined to answer questions relating to the profits of Hertz' Rent-A-Car Division, at the direction of counsel. He testified that neither he nor any other financial officer of Hertz had ever been consulted with regard to the claim of actual damages and did not recall ever seeing the complaint. On December 7, 1983 Avis submitted to Hertz document requests for balance sheets and profit and loss statements of the Hertz Corporation on a monthly and annual basis from 1980 to date, and similar documents from Hertz Europe Ltd. and Hertz International Ltd. Hertz objected to providing that information

on the grounds of "Confidential business information, irrelevant, unduly burdensome and harassing." A possible unstated explanation for Hertz' disinclination to provide factual data showing financial injury was revealed on March 2, 1984, when counsel for Avis cited newspaper articles appearing in October of 1983 that reported record sales by Hertz contributing to a 34% rise in profits of its parent company, RCA.

Meanwhile, Hertz, by notice of discovery and inspection dated February 17, 1984, demanded that Avis produce for inspection and copying on March 5, 1984:

"1. All statements of results of operations, profit and loss statements, balance sheets, and subsidiary reports and statements of assets and liabilities on a monthly, quarterly, and annual basis for all levels of operations from the city, district, or fleet owner level up to the rent-a-car division level of Avis, Inc., including monthly operating reports and city operating reports from January 1, 1970 through June 30, 1983.

"2. All Avis fleet planning documents, including VAMP, WAR, Trend X and Trend Z, Buy/Sell, WHIZ, and Transient Car reports (and all predecessor reports or reports having the same function as each of the foregoing named reports), and rental, revenue, and fleet forecasts, as were generated from the period January 1, 1970 through June 30, 1983."

Hertz also demanded all commentary, analysis and reports that refer, relate or pertain to the aforesaid documents, and all reports and letters to Avis' directors, shareholders, or executives of Avis and its parent company showing Avis' operations results, but the order appealed from directed Avis to disclose only documents described in paragraphs 1 and 2 above. It is not without procedural significance that Hertz mailed its February 17, 1984 notice to produce on February 22, because on February 21, 1984 Hertz had already moved to compel production of the documents sought therein, i.e., before the notice had even been mailed to Avis. Despite this unorthodox motion practice, it appears that the merits were adequately addressed before Special Term, and it is sufficient merely to note that the sequence of service was facially inconsistent with New York Supreme Court rule 660.8 (b) (6) (ii) (22 NYCRR) requiring an affidavit by the moving party that the parties attempted but were unable to resolve by agreement the issues raised by the motion without the intervention of the court.

When the motion was argued on March 16, 1984 before Special Term (William P. McCooe, J.), counsel for Hertz conceded, for the first time, that Hertz had lost no profits by reason

of the acts alleged in the complaint. Nevertheless, the court ordered that Avis produced the documents demanded in paragraphs 1 and 2 of the February 17 notice to produce, although limited to the fiscal years commencing in 1980 (instead of 1970 as demanded by Hertz) and concluding June 30, 1983. Special Term's memorandum stated that "Documents should be produced unless violative of a constitutional right, privilege or palpably improper. *Freedco v. N.Y. Tel. Co.,* 47 AD2d 654; *Watson v. State,* 53 AD2d 798." The holding of these cases, however, is that at an examination before trial, questions should be freely permitted and answered, unless violative of a witness' constitutional rights or a privilege recognized in law, or are palpably irrelevant, since all objections other than as to form are preserved for trial and may be raised at that time. Implicit in this formulation is the recognition that questions answered at an examination before trial, even though not "palpably" improper or irrelevant, may still appropriately be excluded upon timely objection, in the exercise of discretion. The true test is one of usefulness and reason. (*Allen v Crowell-Collier Pub. Co.,* 21 NY2d 403, 406.) Thus, even information "reasonably calculated to lead to relevant evidence may be beyond the scope of disclosure because it is more trouble to gather than it is worth." (Durst, Fuchsberg and Kleiner, Modern New York Discovery, § 17:2, at p 428.)

The "palpably improper" test has also been applied to permit a court to reach the merits concerning the propriety of a discovery notice in the absence of a timely motion for a protective order. (*Lazan v Bellin,* 95 AD2d 751; *Park Knoll Assoc. v Schmidt,* 99 AD2d 772.) In the case at bar, Avis made a timely motion for a protective order, and therefore the "palpably improper" test was not the appropriate test to be applied by Special Term to measure the propriety of Hertz' February 17, 1984 discovery notice. In any event, even if that test were applicable, the demand that Avis produce the approximately 120,000 pages of its highly confidential operational and financial information should have been stricken. In *Butler v District Council 37, Am. Federation of State, County & Municipal Employees, AFL-CIO* (72 AD2d 720), this court evaluated a document request similar to the one submitted by Hertz, found that even a cursory examination of the notice demonstrated it to be palpably improper, and noted that "We cannot conceive of a more oppressive and burdensome notice." (See, also, *White Plains Coat & Apron Co. v Lehmann,* 87 AD2d 629.)

Finally, the financial and operations documents sought from Avis are not subject to discovery because they are irrelevant to Hertz' claim for damages. As noted previously, Hertz does not

now contend that it has lost any profits as a result of Avis' actions, but rather seeks damages based on Avis' increased profits. Special Term cited *Ronson Art Metal Works v Gibson Lighter Mfg. Co.* (3 AD2d 227), in support of its holding that Hertz is entitled to Avis' financial records under this theory. However, *Ronson* merely reaffirmed that "[t]he basic rule of damages in a case of unfair competition is the amount which the plaintiff would have made, except for the defendant's wrong." This court there quoted from *Michel Cosmetics v Tsirkas* (282 NY 195), wherein it was stated: " ' "When a plaintiff in a trade-mark or unfair competition case seeks to recover damages, the burden is on him to prove by competent and sufficient evidence his lost sales, or that he was compelled to reduce prices as a result of his competitor's wrongful conduct. There is no presumption of law or of fact that a plaintiff would have made the sales that the defendant made" ' " (3 AD2d, at p 232). It should be noted that in *Ronson* we had found that " 'there was such a combined copying of plaintiff's [cigarette lighter] designs, slogans, legends and advertising art as to stimulate confusion and constitute unfair competition' " (3 AD2d, at p 229). Certainly in that case the potential correlation between defendant's profits and plaintiff's lost profits was far greater than that presented here, where the alleged wrongful hiring of Hertz' employees and use of Hertz' alleged trade secrets by Avis are only alleged to have increased Avis' profits, and are not alleged to have decreased Hertz' profits.

Other cases cited by Hertz to justify its discovery motion likewise do not in fact support Hertz' position. *Riteoff Inc. v Contact Inds.* (43 AD2d 731) was a case in which the defendant, in breach of a confidential relationship with plaintiff, misappropriated the plaintiff's secret spray cleaner formula and sold the product under its own label. The court directed defendant to account to plaintiff for all profits wrongfully diverted from plaintiff to defendant on its sales. In the case at bar, Hertz has abandoned its claim for lost profits resulting from Avis' acts, and therefore *Riteoff* is clearly distinguishable. In *AGA Aktiebolag v ABA Opt. Corp.* (441 F Supp 747), an employee of coplaintiff AGA Optical secretly formed his own company named ABA Optical, had printed identical stationery, invoices and business cards except for the substitution of a "B" for the "G" in the name AGA, in violation of the latter's trade-mark, pirated his employer's backorder list and solicited customers from that list for his own company, and hindered the continuation of his employer's business. The court held (441 F Supp, at p 755) that upon those facts the defendant's profits were recoverable.

The law appears to be reasonably clear in New York that in an unfair competition case a plaintiff is "entitled to recover as damages the amount of loss sustained by it, including opportunities for profit on the accounts diverted from it through defendants' conduct." (*Duane Jones Co. v Burke,* 306 NY 172, 192; see, also, *American Electronics v Neptune Meter Co.,* 30 AD2d 117; *Gramercy Brokerage Corp. v Cohen,* 43 AD2d 968; *Bruno Co. v Friedberg,* 28 AD2d 91, affd 23 NY2d 798; *Defler Corp. v Kleeman,* 19 AD2d 396, 403, affd on opn below 19 NY2d 694.) As this court stated in *Biltmore Pub. Co. v Grayson Pub. Co.* (272 App Div 504, 507), an "accounting for profits is based upon the assumption and showing that the defendant has either infringed upon plaintiff's trade mark or otherwise passed his goods off as plaintiff's goods, or unfairly competed in some way as to pre-empt business which would otherwise have gone to plaintiff. The accounting for profits in such cases is not in lieu of damages but is the method of computing damages."

Accordingly, Hertz is not entitled to discovery of Avis' financial and operations reports because they would be relevant only to establish Avis' profits, which in turn would be relevant only as a measure of Hertz' lost profits. Since Hertz has disclaimed any loss of profits as a result of Avis' actions, the order of Supreme Court, Special Term (William P. McCooe, J.), entered March 21, 1984, should be modified, on the law, the facts and in the exercise of discretion, to deny Hertz' motion to compel Avis to produce the documents listed in paragraphs 1 and 2 of the February 17, 1984 notice, and otherwise affirmed, without costs, and without prejudice to the service by Hertz of a proper disclosure demand seeking information relevant to a legally cognizable claim for damages.

BLOOM, J. (concurring). I am in accord with the reasoning and conclusion reached by my brother Sandler. However, I would add an additional reason for granting the protective order.

Although the complaint is framed in tort, i.e., interference with the "fiduciary and contractual duty on the part" of one or more employees "with far-reaching responsibilities in respect to the business operations of Hertz", it is much akin to an accounting proceeding. True it is that Hertz and Avis were and are business competitors and there does not exist between them a fiduciary or trust relation respecting the subject matter of the controversy here in question. Technically, therefore, the action is not one for an accounting (1 NY Jur 2d, Accounts and Accounting, § 29). Essentially, however, the action is bottomed on the alleged breach of such a fiduciary relationship — a breach

allegedly induced by Avis. In the circumstances of this case, where the documents sought number well over 100,000 with a host relevant only peripherally, if relevant at all, I would apply the discovery rule applicable to accounting procedures, i.e., that examination as to the loss incurred by Hertz (concededly nonexistent) or the benefit accruing to Avis, purportedly resulting from Vittoria's breach of his fiduciary relationship to Hertz should be deferred until the right to recovery has first been established (cf. *Wood v Cross Props.*, 5 AD2d 853).

ASCH, LYNCH and ALEXANDER, JJ., concur with SANDLER, J. P.; BLOOM, J., concurs in an opinion.

Order, Supreme Court, New York County, entered on March 21, 1984, unanimously modified, on the law, the facts and in the exercise of discretion, to deny Hertz' motion to compel Avis to produce the documents listed in paragraphs 1 and 2 of the February 17, 1984 notice, and otherwise affirmed, without costs and without disbursements, and without prejudice to the service by Hertz of a proper disclosure demand seeking information relevant to a legally cognizable claim for damages.